IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

BILLY T. GREER                                                      PLAINTIFF

VS.                              CIVIL ACTION NO. 5:09-cv-20(DCB)(JMR)

ARMSTRONG WORLD INDUSTRIES, INC.                                    DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendant Armstrong World Industries, Inc. ("Armstrong")'s Motion for Summary Judgment **(docket entry 38)**. Having carefully considered the motion and response, all memoranda, supporting authorities, and exhibits, and being fully advised in the premises, the Court finds as follows:

The complaint in this action charges the defendant with four types of unlawful employment practices toward the plaintiff, namely age discrimination, gender discrimination, retaliation, and intolerable working conditions. Other claims stated in the complaint have been dismissed, including various state law claims and all claims against defendant David Rittger. See Memorandum Opinion and Order of March 24, 2010 (granting, in part, defendants' motion for partial judgment on the pleadings). The remaining claims are as follows:

> COUNT I: age discrimination (disparate treatment) under the Age Discrimination in Employment Act of 1967 ("ADEA").
>
> COUNT II: retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., and the ADEA.
>
> COUNT IV: gender discrimination under Title VII.

COUNT V: intolerable working conditions under "federal employment law."

The defendant moves for summary judgment on all claims pursuant to Fed.R.Civ.P. 56. Summary judgment is designed "to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1; Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citation and internal quotation omitted); see also Berry v. Armstrong Rubber Co., 780 F.Supp. 1097, 1099 (S.D. Miss. 1991), aff'd, 989 F.2d 822 (5th Cir. 1993). A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The moving party bears the initial burden of establishing the absence of genuine issues of material fact. Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990). Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and show that summary judgment is inappropriate. Lavespere, 910 F.2d at 178. The nonmoving party is obligated to oppose the motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial.

2

Fed.R.Civ.P. 56(e); Fields v. City of South Houston, 922 F.2d 1183, 1187 (5th Cir. 1991). If the nonmovant satisfies its burden, summary judgment will not be granted. Id.

Summary judgment is available in employment discrimination cases, see, e.g., Slaughter v. Allstate Ins. Co., 803 F.2d 857, 861 (5th Cir. 1986)(case brought under ADEA), and is appropriate where "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant." Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993)(Title VII retaliation case). The Fifth Circuit has held that summary judgment is appropriate where the plaintiff fails to show a genuine issue of fact on the pretext issue. See, e.g., Amburgey v. Corhart Refractories Corp., Inc., 936 F.2d 805, 813 (5th Cir. 1991); Hanchey v. Energas Co., 925 F.2d 96 (5th Cir. 1990).

In his memorandum brief in response to the defendant's motion for summary judgment, Greer does not dispute that Armstrong is entitled to summary judgment on his intolerable working conditions claim. As for Greer's retaliation claim, the undisputed facts show the following: Greer lodged an internal "ethics complaint" concerning David Rittger at 3:49 p.m. on January 23, 2008. The Director of Compliance did not receive the complaint until 4:53 p.m. that same day, and she did not inform anyone else of the complaint until the following day, January 24. (Toth Aff., ¶¶ 3-

4). The decision to move forward with the plaintiff's termination had already been made on January 15, 2008, and final approval was obtained on January 23, 2008, when Groft met with Terry High and Scott Webster of Armstrong's Severance Committee. (Rittger Depo., pp. 110-12; Groft Aff., ¶ 6). Thus, the decision to terminate Greer's employment was made before any of the decision makers could possibly have learned of Greer's "ethics complaint." (Toth Aff., ¶¶ 3-4). In his response, Greer offers no evidence that would place the chain of events in dispute. The Court therefore finds that Armstrong is entitled to summary judgment on the plaintiff's intolerable working conditions and retaliation claims.

This leaves Greer's claims for employment discrimination based on his age (under the ADEA) and gender (under Title VII). Title VII makes it "an unlawful employment practice for an employer ... to discharge ... or otherwise to discriminate against any individual with respect to his compensation terms, conditions, or privileges of employment, because of such individual's ... sex ...." 42 U.S.C. § 2000e-2(a)(1). The ADEA forbids "an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The standard of proof for Title VII discrimination claims also applies to ADEA claims. See O'Connor v. Consol, Coin Caterers Corp., 517 U.S. 308, 311 (1996). Because the

same facts underlie both causes of action, the Court conjunctively analyzes Greer's Title VII and ADEA claims. See Bauer v. Albemarle Corp., 169 F.3d 962, 967 (5th Cir. 1999).

"The Title VII inquiry is 'whether the defendant intentionally discriminated against the plaintiff.'" Johnson v. Louisiana, 351 F.3d 616, 621 (5th Cir. 2003)(quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)). Courts traditionally employ two frameworks for analyzing discrimination claims: "mixed-motive" and "single-motive" or "pretext." See Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)(mixed-motive); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)(pretext). Under the mixed-motive framework, the individual must demonstrate, by either direct or circumstantial evidence, that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons. Price Waterhouse, 490 U.S. at 241. Under the pretext framework, after the employee demonstrates a prima facie case of discrimination and the employer meets its burden of positing a legitimate, non-discriminatory reason for the employment action, the burden falls to the employee to establish that the employer's permissible reason is actually a pretext for discrimination. Burdine, 450 U.S. at 252-53; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973).

In order to withstand summary judgment, Title VII requires that Greer, using direct or circumstantial evidence, "present

5

sufficient evidence for a reasonable jury to conclude ... that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003)(quoting 42 U.S.C. § 2000e-2(m)). Greer argues that impermissible considerations, namely gender and age, motivated Armstrong's employment decisions.

Greer's claims under Title VII and the ADEA are both for discriminatory termination. Greer does not present any direct evidence of discrimination to support his Title VII claim. With regard to his ADEA claim, he claims that a question put to him by David Rittger asking him "what [his] plans were about retirement," (Greer Depo., pp. 31, 137; Rittger Depo., pp. 35, 38-39) constitutes direct evidence of discrimination. It is undisputed, however, that this question was asked of Greer on only one occasion, at a meeting where employees were routinely asked questions related to succession planning, and that it was asked seven months prior to the plaintiff's discharge. The Court finds that this is not direct evidence of discrimination because (1) it is too remote in time from the employment decision at issue, and (2) it is not directly related to the employment decision at issue and requires the fact finder to draw additional inferences. See Dickerson v. Jones County, Mississippi, 2007 WL 763925 *4 (S.D. Miss. March 9, 2007).

Greer must therefore establish a prima facie case as to both

gender and age discrimination based on circumstantial evidence. To establish a prima facie case of gender discrimination, he must show the following:

>    (1) he was a member of a protected class;
>
>    (2) he was qualified for the position from which he was discharged at the time of discharge;
>
>    (3) he was discharged despite his qualifications;
>
>    (4) he was replaced by a person outside the protected class or he shows otherwise that his discharge was due to his gender and/or his age.

<u>McDonnell Douglas</u>, 411 U.S. at 802. Similarly, to establish a prima facie case of age discrimination, he must show that:

>    (1) he was discharged;
>
>    (2) he was qualified for his position;
>
>    (3) he was within the protected class at the time of his discharge; and
>
>    (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age.

<u>Rachid v. Jack In The Box, Inc.</u>, 376 F.3d 305, 309 (5th Cir. 2004).

If the plaintiff establishes his prima facie case of discrimination, then a rebuttable presumption of intentional discrimination is created which the employer can rebut by articulating some legitimate, non-discriminatory reason for its action. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993). Although the presumption shifts the burden of production to the defendant, the ultimate burden of persuading the trier of

fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.  Id.  Once the employer puts forward evidence of a legitimate reason for its employment decision, the presumption raised by the prima facie case is rebutted and the plaintiff must prove that the defendant's proffered reason was not the true reason for her discharge and that race or age was.  Id.

The undisputed facts show that the plaintiff, who is now 68 years of age, worked for Armstrong from April 1999 until his termination in February of 2008.  In 2004, he began serving as Armstrong's Division Controller for its Engineered Wood Division. As Division Controller, he provided financial leadership in the areas of budgeting, forecasting, compliance reporting, and operations analysis at four Armstrong plants: Statesville, North Carolina; Center, Texas; Somerset, Kentucky; and Vicksburg, Mississippi.  One of his key responsibilities was ensuring that the budgets for each of these plants were accurate and submitted in a timely fashion. (Pl. Depo., pp. 65-67; Rittger Depo., pp. 47, 58-59).  Armstrong employees set goals, known as "promises," for each year.  For the year 2007, Greer's "promises" were:

(1) Submit financial and accounting data in an accurate and timely manner;

(2) Implement SAP manufacturing, a type of IT process;

(3) Design and implement a forecasting tool and checklist;

(4) Develop consistent and reliable forecasting procedures for

all his plants; and

(5) Manage and develop his plant controllers and assistant plant controllers.

(Rittger Depo., pp. 136-39, Exh. 12). In July 2007, Rittger conducted Greer's midyear review. At their meeting, Rittger and Greer discussed Greer's performance to date relative to his promises, and discussed the topic of succession planning, including Greer's career goals and any plans he might have to retire or leave in the short term. Greer informed Rittger that he was satisfied with his current position and had no intention of retiring in the next three years. Rittger advised Greer that he had no issues with Greer's performance. (Rittger Depo., pp. 43, 160).

Beginning in the fall of 2007, Rittger and others began to observe performance deficiencies on Greer's part, including an untimely budget submission for the Vicksburg plant, budgeting errors, inappropriate behavior toward Rittger including argumentativeness and profanity, and abusive language directed toward a supervisor, James Stone. (Pl. Depo., pp. 102-03; Rittger Depo., p. 116, Exh. 9). Rittger conveyed these concerns to Greer and offered him a less demanding position as Plant Controller at Vicksburg. Greer declined the offer. (Pl. Depo., pp. 33, 40, 47-48).

On December 6, 2007, Rittger and Greet met to discuss his performance. Terry Dyer and Lindsey Groft, with Human Resources, were also at this meeting. Greer was presented with an updated

9

performance review, assessing an "unacceptable" rating in three of his five 2007 goals: (1) the quality and timeliness of his work; (2) the design and implementation of a forecasting tool; and (3) the management and development of his plant controllers and assistant controllers. (Rittger Depo., pp. 136-39, Exh. 12). Greer was issued a performance improvement plan ("PIP") to assist him in improving his performance. (Pl. Depo., Exh. 2; Groft Aff., ¶ 2). Greer was told that his performance rating was 2 out of 5, "less than effective," and that he needed to improve immediately. His PIP established four specific "development actions" for Greer to follow, and required follow-up reviews in 30, 60 and 90 days. The plaintiff concedes that these were all reasonable expectations. (Pl. Depo., pp. 65-68, 71-73, 77, 122, Exh. 2; Groft Aff., ¶ 2).

On January 15, 2008, Rittger and Greer met, along with Dyer and Groft, for his 30-day review. Rittger explained to Greer that he was still falling short in all four "development action" items. Among other things, Greer was told that he had made more data errors and missed more deadlines in some of his deliverables during December. Greer acknowledged that he had failed to develop a system to catch such errors, as required by his PIP. He was reminded that several resources had been put in place to help him. (Pl. Depo., pp. 67, 78-84, Exh. 3; Rittger Depo., pp. 97-99; Groft Aff., ¶ 2). The plaintiff's demeanor during this meeting indicated that he had little interest in improving his performance. He said

very little, or just "grunted" during the entire meeting. (Rittger Depo., pp. 103, 147). Rittger, Dyer and Groft agreed that Greer should be terminated, and initiated the process of obtaining the necessary internal approvals. Another meeting with Greer was scheduled to take place at 45 days instead of the usual 60. (Rittger Depo., pp. 103, 147-48; Groft Aff., ¶ 3).

The 45-day review took place on January 28, 2008. Greer was informed of his ongoing deficiencies, including continued issues with respect to work quality, timeliness and mentoring. The plaintiff concedes that, between his 30-day review and his 45-day review, he submitted various deliverables in an untimely fashion and failed to communicate with others in advance about the delays, as required by his PIP. He also concedes that he submitted an incentive proposal that contained erroneous assumptions and other errors. (Pl. Depo., pp. 84-85, 92, 94, Exh. 4; Rittger Depo., p. 100).

The decision to terminate Greer's employment was based on concern that the plaintiff's continued performance deficiencies and failure to improve exposed Armstrong and its Financial Department to financial and legal compliance risks. (Rittger Depo., p. 110; Groft Aff., ¶ 3). A group of eight individuals (Rittger, Dyer, Groft, Brian Evans, Steve Smith, Terry High, Scott Webster and Robert Sandkuhler) participated in the decision-making process. (Def.'s Resp. to Pl.'s Interrogatory No. 2). The decision to

proceed with the termination was initially made following the 30-day review meeting of January 15, 2008, but final approval was not obtained until January 23, 2008, when Groft met with Terry High and Scott Webster of Armstrong's Severance Committee. Since a face-to-face meeting with Greer could not be arranged in Vicksburg until some time later, Greer was issued the 45-day review on January 28, 2008. The plaintiff was informed of his termination in a face-to-face meeting in Vicksburg on February 15, 2008. (Rittger Depo., pp. 111-12; Groft Aff., ¶¶ 3-4, 6).

These undisputed facts establish that Greer's employment was terminated for unacceptable performance and not on account of his age or gender. The plaintiff has failed to state a prima facie case of age discrimination because he has not shown that he was replaced by someone under 40 or by someone younger. See Fields v. J.C. Penney Co., 968 F.2d 533, 536 (5th Cir. 1992). Nor has the plaintiff suggested that a similarly situated employee under the age of 40 was treated more favorably than he. Furthermore, the defendant's legitimate, non-discriminatory reasons for Greer's termination, which are not disputed, would satisfy the defendant's burden even if the plaintiff were able to establish a prima facie case, and the plaintiff has not produced any evidence of pretext.

As for the plaintiff's gender-based discrimination claim, he was replaced by a male and the principal decision-maker with respect to his discharge (Rittger) was also a male. He attempts to

show that a female, Jan Robertson, the plant controller at Armstrong's Somerset, Kentucky, facility was afforded more favorable treatment because she had performance issues but was not issued a PIP. However, it is undisputed that Armstrong had made the decision to issue Robertson a PIP, but she resigned before it was issued. (Pl.'s Depo., p. 115). Greer cannot show that Robertson was treated more favorably, and he therefore has not established a prima facie case. In addition, Greer has not shown that Robertson was similarly situated. As the Fifth Circuit has indicated:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated.

Lee v. Kansas city Southern Ry. Co., 574 F.3d 253, 259-60 (5th Cir. 2009). Robertson and the plaintiff had different responsibilities and different supervisors. In fact, Robertson was one of the plaintiff's subordinates, which negates any suggestion that she and the plaintiff were proper comparators. See Amezquita v. Beneficial Texas, Inc., 264 Fed.Appx. 379 (5th Cir. 2008)(holding that supervisor and his subordinate were not proper comparators for purposes of gender discrimination claim). Finally, as with Greer's age-based discrimination claim, the defendant's legitimate, non-discriminatory reasons for Greer's termination, which are not

13

disputed, would satisfy the defendant's burden if a prima facie case were stated, and the plaintiff has not produced any evidence of pretext.

The defendant is therefore entitled to summary judgment on all of the remaining claims against it.
Accordingly,

IT IS HEREBY ORDERED that the defendant Armstrong World Industries, Inc.'s Motion for Summary Judgment **(docket entry 38)** is GRANTED.

A separate Final Judgment dismissing this action with prejudice shall be entered.

SO ORDERED, this the 21st day of July, 2010.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE
